UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re ) | | Chapter 7 |
| ) | | |
| Veronica Aguilar and Jose E. Aguilar, ) | | Case No. 10-38275 |
| ) | | |
| Debtors. ) | | |
| ) | | |
| ) | | |
| Robert J. Sargis, ) | | Adv. No. 13-00299 |
| ) | | |
| Plaintiff, ) | | |
| v. ) | | |
| ) | | |
| Veronica Aguilar and Jose E. Aguilar, ) | | Hon. Jacqueline P. Cox |
| ) | | |
| Defendants. ) | | |

**Memorandum Opinion**

This matter is before the Court for ruling on Plaintiff's Amended Complaint to determine dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A). Therein, Plaintiff argues, inter alia, that the Debtors, through their agent, made false representations in procuring a mortgage loan. For the reasons that follow, the Court enters judgment in favor of the Plaintiff.

**I.     Jurisdiction and Venue**

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter involves a core proceeding under 28 U.S.C. § 157(b)(2)(I): determination as to dischargeability of particular debts.

**II.    Facts and Background**

Eighty-eight year old plaintiff Robert J. Sargis (the "Plaintiff" or "Sargis") is a creditor of debtors Veronica Aguilar and Jose E. Aguilar ("Debtors") in the bankruptcy proceeding.

In 2006, Susana Limon ("Limon"), Veronica Aguilar's sister, located a home she wanted to buy; however, she did not qualify for a mortgage due to her poor credit rating. (Joint Stip., p. 4, ¶ 39.) Debtors agreed to apply for the mortgage loan for Limon and hired Victor Paredes ("Paredes") a long-time friend and fellow church member to procure financing. Paredes, the former president and agent of ProCasa Mortgage Corporation ("Pro Casa Mortgage") and ProCasa Realty, acted as the Debtors' mortgage loan originator (Pl. Ex. 8, Broker Fee Disclosure) and procured a loan from BNC Mortgage to the Aguilars as borrowers. (Joint Ex. 7, BNC Mortgage; Joint Stip., p. 3, ¶ 31, dkt. no 53.)

The Debtors then purchased a single family residential property located at 3512 S. 61st Avenue, Cicero, Illinois (the "Property") and granted a mortgage to BNC Mortgage, Inc. ("BNC"). The mortgage to BNC was accompanied by a promissory note signed by the Debtors.

Paredes also solicited a private loan from the Plaintiff and arranged for the Debtors and Limon to borrow $21,000 as a second mortgage to cover the closing costs and down payment. Paredes informed Sargis that the Debtors and Limon would live together at the Property. Based on that representation, Sargis issued a check dated May 11, 2006 made out to the Debtors in the amount of $21,000. (Joint Ex. 3, Check dated May 11, 2006.) The Debtors and Limon executed a note in favor of Plaintiff in the amount of $21,000 (the "Sargis Note"). (Joint Ex. 4.) The Sargis Note was secured by a mortgage to Plaintiff, also dated May 16, 2006 (the "Sargis Mortgage"). Pursuant to the Sargis Note, Debtors and Limon assumed joint and several liability on the obligation to Plaintiff. (Joint Ex. 4, Sargis Note.)

By April 15, 2009, the Sargis Note was in default. Up to the time of default, all payments on the Sargis Note were made by Limon, who resided in the Property with her husband and children. (Joint Stip, ¶ 40, dkt. no. 53.)

On July 25, 2012, a Judgment of Foreclosure and Sale was entered against the Debtors in

the amount of $32,994 for the amount due and owing on the Sargis Note.

On May 22, 2013, Plaintiff filed an Amended Complaint (the "Complaint") objecting to the dischargeability of the $32,994 debt under 11 U.S.C. § 523(a)(2).[1] The Plaintiff alleges that Debtors, through their agent, made false representations by becoming borrowers and purchasers of the Property, when in fact they had no intention of making any payments on the Sargis Note or residing at the Property.

### III. Applicable Law

#### A. Count I - False Representation and Actual Fraud § 523(a)(2)(A)

A party seeking to establish an exception to discharge of a debt bears the burden of proof. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Section 523(a)(2)(A) of the Bankruptcy Code (the "Code") excepts from discharge a debt incurred by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) sets forth three separate grounds for dischargeablility: false pretenses, false representation, or actual fraud. An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact. *Bletnitsky v. Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

##### 1. False Pretenses or False Representation

To except a debt from discharge based on false pretenses or a false representation, a creditor must establish that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d

---

[1] Plaintiff's § 523(a)(6) claim was withdrawn prior to trial. *See* Plaintiff's Trial Brief, p.1 n.1.

-3-

712, 716-17 (7th Cir. 2010). All three elements must be proven to prevail on a § 523(a)(2)(A) claim. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

False pretenses under § 523(a)(2)(A) "include implied misrepresentations of conduct intended to create or foster a false impression." *Nicholas & Assoc. v. Morgan (In re Morgan)*, 2011 WL 3651327, at * 4 (Bankr. N.D. Ill. Aug. 18, 2011) (internal citation omitted). A false pretense does not require overt misrepresentations. *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 928 (Bankr. N.D. Ill. 1996). Rather, "omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that the omissions or failure to disclose create a false impression which is known by the debtor." *Sarama*, 192 B.R. at 928.

A false representation, by contrast, is an express misrepresentation demonstrated either by a spoken or written statement or through conduct. *In re Morgan*, at * 4. A debtor's silence concerning a material fact can also constitute a false representation. *Id.* (citing *In re Westfall*, 379 B.R 798, 803 (Bankr. C.D. Ill. 2007)).

### 2. Actual Fraud

To establish a claim for actual fraud under § 523(a)(2)(A), the plaintiff must prove that (1) a fraud occurred (2) the debtor intended to defraud, and (3) the fraud created the debt. *Wachovia Securities, LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 669 (Bankr. N.D.Ill. 2010).

The Seventh Circuit Court of Appeals has defined fraud for purposes of § 523(a)(2)(A) as follows:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and

any unfair way by which another is cheated.

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000). Further, fraud includes "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan*, at 893.

### 3.     Intent

A cause of action under any prong of § 523(a)(2)(A) requires a showing that the debtor acted with an intent to deceive. *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Intent to deceive is measured by the debtor's subjective intention at the time the representation was made. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). Because proof of fraudulent intent may be unavailable, the scienter requirement may be inferred from surrounding circumstances. *Hickory Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D. Ill. 2007).

### 4.     Justifiable Reliance

The final element under § 523(a)(2)(A), justifiable reliance, requires that a creditor not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71 (1995). Under this standard, the creditor has no duty to investigate unless the falsity of the representation would have been readily apparent. *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (citing *Field*, 516 U.S. at 70-71). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (quoting *Field*, 516 U.S at 70).

B.  **Apparent Agency Theory of Liability**

In his Complaint, Plaintiff asserts that the Debtors are liable for the deceitful conduct of Paredes under an agency theory of liability. Under Illinois law,[2] a principal-agent relationship arises where "the principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationship of the principal." *Chemtool, Inc. v. Lubrication Techs.*, 148 F.3d 742, 745 (7th Cir. 1998). "An agent is one who, acting under authority from another, transacts business for him, and a true agency requires that the agent's function be the carrying out of the principal's affairs." *Chemtool*, 148 F.3d at 745 (quoting *Lang v. Consumers Ins. Services Inc.*, 222 Ill. App. 3d 226, 232 (1991)).

The relationship between a borrower and a mortgage broker creates a principal-agent relationship. *See Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F.Supp.2d 885, 903 (N.D. Ill. 2009) (quoting *DeLeon v. Beneficial Constr. Co.*, 55 F. Supp. 2d 819, 827 (N.D. Ill. 1999) ("In Illinois, when one party undertakes to find financing on behalf of another, a principal and agent relationship is created."))

"Agency can arise when an agent has either 'actual' or 'apparent' authority to act on the principal's behalf." *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 670 (N.D. Ill. 2005). An agent has actual authority to act when the principal's words or actions would lead a reasonable person in the agent's position to believe that he was so authorized. *Caterpillar*, 393 F.Supp.2d at 670. An apparent agency relationship arises when "a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Id.* "The principal, having placed the agent in a situation where he may be presumed to have authority to act, is estopped as against the third party from denying the agent's apparent authority." *Farley v. Chiappetta*, 163 B.R. 999, 1007-1008 (N.D. Ill. 1994)

---

[2]The Court recognizes that both Illinois and federal common law follow the RESTATEMENT (SECOND) OF AGENCY § 1 (1971). *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (noting that the Illinois law of agency, and the federal common law of agency accord with the Restatement of Agency).

-6-

(quoting *Northern Trust Co. v. St. Francis Hosp.*, 168 Ill.App.3d 270, 278 (1988)).

The elements required to establish an apparent agency relationship are:

(1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third party's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third party's reliance on the agent's apparent authority to his or her detriment.

*Farley*, at 1008.

The court may infer the existence of an agency relationship from circumstantial evidence, including the situation occupied by the parties, their acts and other circumstances. *In re Stoecker*, 202 B.R. 429, 456 (Bankr. N.D. Ill. 1996) (citing *City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 518 (Ill. 1960)), *rev'd on other grounds*, 179 F.3d 546 (7th Cir. 1999).

### IV.   Discussion

#### A.   Paredes was the authorized Agent of the Debtors

Having considered the evidence submitted, the Court finds that Paredes was in fact the authorized agent of Debtors.

*1.   Debtors' Consent to Paredes' Exercise of Authority*

The evidence reveals that in early 2006, Debtors approached Paredes, their longtime friend and church member, to assist them in obtaining private financing to purchase the Property for Limon. Debtors' consent to Paredes' exercise of authority is evident from an executed application for a residential mortgage loan submitted to ProCasa Mortgage, an entity owned by Paredes, to assist them in finding a mortgage loan. (Pl. Ex. 8, Broker Fee Disclosure.) In May 2006, Paredes successfully procured a loan for the Aguilars through BNC in the principal amount of $190,350 for the purchase of the Property. (Joint Ex. 7, BNC Mortgage.) The evidence also reveals that the Debtors again sought Paredes' assistance to procure a second mortgage when it became apparent that neither Debtors nor Limon had sufficient funds to cover down payment and closing costs associated with the purchase of the Property. (Tr. 77:1-11.)

Although no evidence of a written agreement between Debtors and Paredes regarding the second mortgage was produced, Ms. Aguilar testified that she and Paredes discussed the need to procure additional financing through a private lender. (Tr. 42:13-25.) At Debtors' direction, Paredes searched for a private investor on their behalf. (Tr. 46:2-8.) Paredes ultimately selected Sargis for an investment as a junior lienholder for Debtors. The evidence establishes that Paredes received payment for his services from the Debtors out of the BNC loan proceeds at closing. (Joint Ex. 9, HUD-1 Statement; Joint Stip., dkt. no. 53, ¶ 10.) The Court determines that Paredes' role in seeking out and procuring mortgage financing and the Debtors' payment for his services demonstrate that the Debtors consented to Paredes' exercise of authority in procuring the Sargis loan on their behalf.

### 2.    *Knowledge and Good Faith belief of Authority*

The Court also finds that Sargis had knowledge of the facts and a good faith belief that Paredes had authority to negotiate the loan transaction on the Debtors' behalf. During Sargis' various meetings with Paredes, he was provided with a description of the Property and photo identification of the Debtors, whom Paredes indicated would reside at the Property with Limon. (Trial Tr. ("Tr.") 113:5-19, April 24, 2014.) At the final meeting with Paredes, with whom Sargis had done business in the past, Sargis agreed to loan Debtors the $21,000 needed to close on the Property. The Court finds that the information provided by Paredes, coupled with the fact that Sargis and Paredes had engaged in similar transactions in the past support Plaintiff's assertion that he acted with good faith in believing that Paredes had authority to negotiate the loan transaction.

### 3.    *Plaintiff's Reliance to his detriment*

The Court finds credible Sargis' testimony that he agreed to finance the second mortgage as a result of Paredes' representation that the Debtors and Limon would live in the Property. Sargis testified that based on the representation that three working adults would reside at the Property, he was assured that the loan would be repaid. (Tr. 126:3-15.) He also testified that he

would not have provided financing had he known the Debtors would not live in the Property. Sargis' reliance on these representations to his detriment is evident by the mere fact that he agreed to finance the loan, on which the Debtors ultimately defaulted.

Having determined that Paredes acted as the Debtors' agent under an apparent agency theory, the Court will now consider whether Debtors, through Paredes as their agent, made false pretenses and false representations within the meaning of § 523(a)(2)(A) to secure the Sargis loan.

### B.  Count I

In Count I of the Complaint, Plaintiff seeks a judgment declaring that the $32,994 debt owed by Debtors is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Court determines that the Plaintiff has established, by a preponderance of the evidence that the Debtors, through their agent Paredes, made false pretenses and false representations of material fact in procuring the Sargis loan.

The evidence establishes that Paredes made false representations when he told the Plaintiff that the Debtors and Limon would reside in the Property, when he knew this to be untrue. In addition, Paredes presented copies of photo identification of the Debtors to Sargis, which created the false impression that they would reside in the Property. The representations made by Paredes concern a material fact, as Sargis made clear to Paredes that he was not interested in loaning money to investors, only to persons who would reside in the premises. (Tr. 97:12-25; 98:1-13; 126:25; 127:1-14.) The evidence submitted reveals that at the time the representations were made, Paredes knew that the Debtors were already the owners of a home located at 3837 N. Christiana in Chicago, Illinois and had no intention of living at the Property. (Joint Ex. 2, Debtors' Illinois Identification Cards.)

The Debtors maintain that they never instructed Paredes to state that they intended to live at the Property. However, under an apparent agency theory of liability, the principal is bound,

-9-

"not only by the explicit authority he gives to another, but also by the authority he appears to give that party with respect to others." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill.2d 17, 31 (1999). Debtors are therefore bound by the actions of Paredes. Having consented to Paredes' exercise of authority as their agent, the Debtors cannot now distance themselves from his deceitful conduct in procuring the funds at their behest.

The Court also finds that Paredes' representations to Sargis constitute actual fraud under § 523(a)(2)(A). As discussed above, Paredes falsely represented the circumstances necessitating the loan which induced Sargis to make the loan to the Debtors. In particular, Paredes informed Sargis that the Debtors would reside in the Property with Limon and be jointly responsible for repayment of the Sargis loan when the evidence shows that Paredes knew this to be untrue. (Tr. 109:4-14; 122:19-25;123:1-11; 126:1-6.) Paredes' fraudulent representations caused Sargis to issue a check dated May 11, 2006, made payable to "Jose E. and Veronica Aguilar" in the amount of $21,000 for the loan. (Joint Ex. 3, Check dated May 11, 2006.)

The Court also finds that the representations made by Paredes were made with the intent to deceive and defraud Sargis. The Debtors admit that the Property was purchased in their name because Limon could not qualify for a mortgage loan. Ms. Aguilar testified that at the time they signed the Sargis Note *they never intended to repay the loan.* (Tr. 75:4-15.) When arranging the transaction with Sargis, Paredes was aware that the Debtors would not live in the Property and that only Limon would be making the payments, yet he failed to disclose this material information to Sargis. (Tr. 127:15-19.) The Court infers from Paredes' failure to inform Sargis of material facts that he acted with an intent to deceive Sargis.

Finally, the Court finds that Sargis' reliance on the representations made by Paredes was justified. Plaintiff testified that at the time of the transaction, he had known Paredes for nearly 5 years through their membership at a health club. (Tr. 94:19-25; 95:1-8.) Over the course of that relationship, Sargis worked with Paredes to provide mortgage financing for several other families. (Tr. 103:18-20.) Sargis testified that because of the success of those prior transactions, he believed Paredes' representations to be truthful. (Tr. 123:8-21.)

Debtors argue that Plaintiff's reliance was not justified due to his failure to investigate the Debtors' finances. (Def. Tr. Brief, p. 6, dkt. no. 56.) However, the Seventh Circuit has made clear that "a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." *Ojeda*, at 717. In this case, the Court has seen no evidence suggesting that Paredes' deception was readily apparent to Sargis. To the contrary, the information provided to Sargis created the impression that the Debtors would indeed reside at the Property and pay off the loan. (Tr. 105:5-16; 111:20-25; 112:1-25; 113:1-14.) Given Sargis' previous business dealings with Paredes and the information provided concerning the Property and the borrowers, the Court finds that Plaintiff's reliance on the representations made by Paredes was justified.

### V.     Conclusion

In sum, the Court determines that the Plaintiff has established, by a preponderance of the evidence, all required elements to prevail on his false representation claim under 11 U.S.C. § 523(a)(2)(A). The Court thus finds that the debt owed to Plaintiff in the amount of $32,994 is nondischargeable.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate judgment order will be entered in favor of Plaintiff on Count I of the Amended Complaint.

Dated: May 29, 2014                                    ENTER:

                                                       *Jacqueline P. Cox*
                                                       ─────────────────────
                                                       Jacqueline P. Cox
                                                       U.S. Bankruptcy Judge